IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MATTHEW FAUSH** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **TUESDAY MORNING, INC.** | : | **NO.  12-7137** |

**MEMORANDUM**

**RESTREPO, J.**                                                                                          **JANUARY 23, 2014**

Plaintiff, Matthew Faush, initiated this action against defendant, Tuesday Morning, Inc. ("Tuesday Morning"), seeking redress for racial discrimination.[1]  Specifically, the Complaint alleges, "Plaintiff and other African American coworkers were terminated by Defendant because of their race."  See Pl.'s Compl. ¶ 34.  Plaintiff seeks equitable relief, as well as compensatory and punitive damages, against Tuesday Morning under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), (2) 42 U.S.C. § 1981, and (3) the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951, et seq.  See Pl.'s Compl. ¶¶ 1-44.  Count I of plaintiff's Complaint includes allegations of unlawful racial discrimination under Title VII. Id. ¶¶ 35-37.  In Count II, under § 1981, plaintiff alleges that he suffered damages by way of denial of benefits of a contractual relationship with defendant as a result of intentional discrimination on the basis of his race.  Id. ¶¶ 39-41.  Count III alleges racial discrimination under the PHRA.  Id. ¶¶ 42-44.

Before the Court is defendant's motion for summary judgment, defendant's brief in support thereof, plaintiff's response, and defendant's reply.  For the following reasons,

---

[1] Although this case was originally assigned to the Honorable R. Barclay Surrick, it was subsequently reassigned to my calendar.

defendant's summary judgment motion is granted.

### 1.   BACKGROUND

Plaintiff alleges that a Tuesday Morning manager, Keith Davis, and one of defendant's female employees, who were both Caucasian, acted in a way constituting racial discrimination against plaintiff and his coworkers at Tuesday Morning.  See Compl. ¶¶ 17-37.  Plaintiff worked for several days at a Tuesday Morning store in Bucks County, Pennsylvania ("the Store").  See id. ¶¶ 12-14.  He alleges that Tuesday Morning, through the actions of Mr. Davis, terminated plaintiff and other African American coworkers, resulting in damages to plaintiff.  Id. ¶ 14.

Labor Ready ("the staffing company"), the national staffing company who assigned plaintiff to work at the Store, and Tuesday Morning are two separate and distinct companies. See Decl. of Theresa Kirk-Fowler, Def.'s Senior H.R. Mgr., dated 5/20/13, ¶ 3.  Defendant, Tuesday Morning, is a retail company operating over 800 stores in 43 states.  Id. ¶ 2.  It sells home and gift closeout merchandise.  Id.

On November 22, 2010, Labor Ready and Tuesday Morning entered into an Agreement to Supply Temporary Employees ("Agreement") for services to be provided in 2011 (attached to Kirk-Fowler Decl. as Ex. A).  The Terms and Conditions to the Agreement ("Terms and Conditions") (attached to Kirk-Fowler Decl. as Ex. B) were fully incorporated into the Agreement itself.

Pursuant to the Agreement, Labor Ready assigned several of its employees, including plaintiff, to work at the Tuesday Morning Store in Chalfont, Pennsylvania to assist Tuesday Morning with preparing its Store for opening in June 2011.  Id. ¶ 6.  Plaintiff worked at the Store on May 9, 10, 12, 23, 24, 25, 26, 27, 28, and 29 in 2011.  Id. ¶ 9.

Tuesday Morning has no record that plaintiff has ever applied for employment with Tuesday Morning, Tuesday Morning has never paid any wages to plaintiff or provided any employment benefits to him, and it also has never entered into any contracts with him.  Id. ¶ 2. Under the Agreement and the incorporated Terms and Conditions, Labor Ready was solely responsible for the payment of wages to the temporary employees it assigned to Tuesday Morning.  Id. ¶ 5. Labor Ready was also solely responsible for paying all required taxes and social security on behalf of such employees, and it was solely responsible for either self-insuring or maintaining workers compensation insurance for the employees it provided to work on Tuesday Morning projects.  Id.  Tuesday Morning never provided any Labor Ready workers assigned to work at the Store with a key to the Store.  Tuesday Morning never intended to utilize any of the Labor Ready employees who worked at the Store as Tuesday Morning employees.  Id.

Labor Ready gave a time card to all of its employees, including plaintiff, that were assigned to work at the Store, and once the amount of time they spent working at the Store was recorded, the time cards were returned to the Labor Ready office.  Labor Ready charged Tuesday Morning an hourly fee for each of the temporary employees it provided to work at the Store, Labor Ready sent an invoice to Tuesday Morning listing the number of hours each Labor Ready employee worked at the Store, and Tuesday Morning paid the amount of the invoice to Labor Ready.  Id. ¶¶ 8-9.

Labor Ready was solely responsible for setting the pay rate and paying the wages of the employees, including plaintiff, that they assigned to work at the Store.  Id. ¶ 10.  Indeed, Labor Ready has never sent plaintiff's social security number to Tuesday Morning.  Id.

Plaintiff was not expected to contact any Tuesday Morning employee if he was not able to report to work at the Store.  Id. ¶ 11.  Furthermore, when plaintiff worked at the Store in May

2011, he only could perform work that was within the scope of the Agreement that Tuesday

Morning had with Labor Ready.  Id.

      Tuesday Morning has never had the authority to terminate plaintiff's employment with

Labor Ready.  Id. ¶ 12.  Accordingly, after plaintiff ended his work at the Store in May 2011,

Tuesday Morning never received any claim for unemployment compensation benefits from

plaintiff naming Tuesday Morning as his employer.  Id.

      In support of its summary judgment motion, defendant argues that plaintiff is not entitled

to relief under Title VII and the PHRA because plaintiff was not an employee of Tuesday

Morning.  See Def.'s Br. 2.  Similarly, defendant further argues that plaintiff's claim under §

1981 should be dismissed because plaintiff never had any contract for employment with Tuesday

Morning.

## 2.  LEGAL STANDARD

      Summary judgment is appropriate if the movant shows "that there is no genuine dispute

as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any

element essential to that party's case and who bears the ultimate burden of proof at trial.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In examining the motion, all reasonable

inferences must be drawn in the nonmovant's favor.  InterVest, Inc. v. Bloomberg, L.P., 340

F.3d 144, 159-60 (3d Cir. 2003).

      The initial burden of demonstrating there are no genuine issues of material fact falls on

the moving party.  See Fed. R. Civ. P. 56(a).  Once the moving party has met its burden, the

nonmoving party must counter with "specific facts showing that there is a genuine issue for

trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation

omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence"

for elements on which she bears the burden of production. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to

defeat summary judgment. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation

omitted).


### 3.  DISCUSSION

Both parties agree that Mr. Faush first must establish that Tuesday Morning was his

employer in order to make a valid claim under Title VII, the PHRA, and § 1981 in this case. The

parties dispute the appropriate test that applies to determine whether defendant Tuesday Morning

was plaintiff's employer for purposes of plaintiff's claims. Plaintiff contends that, in

determining employer status, the "joint employer" test should be applied to find Tuesday

Morning was his employer pursuant to In re Enterprise Rent-A-Car Wage & Hour Employment

Practices Litigation, 683 F.3d 462 (3d Cir. 2012).[2] See Pl.'s Br. 4-5. Tuesday Morning argues

that the test applied in Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 322-24

(1991), is the applicable test.[3] See Def.'s Reply 3-4; see also Scott v. UPS Supply Chain

---

[2] As defendant points out in its reply brief, see Def.'s Reply at 2, plaintiff's Complaint does not appear to allege any facts mentioning Labor Ready, let alone any facts indicating a joint employer relationship existed.

[3] While Plaintiff argues that "[t]he Darden test should not apply," see Pl.'s Br. 8, and that "[d]efendant qualifies as a 'joint employer' under the [joint employer] test," id. 4-5, plaintiff does not specifically dispute that summary judgment is warranted if the Darden test is applicable on the basis that defendant does **not** qualify as an employer under the Darden test, see, e.g., id. at 8.

<u>Solutions</u>, 523 Fed. Appx. 911, 912-13 (3d Cir. 2013); <u>Shah v. Bank of America</u>, 346 Fed. Appx.

831, 833 (3d Cir. 2009); <u>Prather v. Prudential Fox & Roach</u>, 326 Fed. Appx. 670 (3d Cir. 2009).

      In <u>Shah</u>, <u>Prather</u>, and more recently in <u>Scott</u>, as in this case, workers brought respective

actions alleging employment discrimination during the plaintiffs' temporary work assignments

with staffing agencies' clients.  The plaintiffs asserted claims for, among other things, violations

of Title VII.

      In each of these cases, the Court applied the test from <u>Darden</u> and found: "In order to

determine whether a person is an employee for purposes of Title VII, the common law of agency

and the traditional master-servant doctrine applies."  <u>Scott</u>, 523 Fed. Appx. at 912-13; <u>Shah</u>, 346

Fed. Appx. at 834; <u>Prather</u>, 326 Fed. Appx. at 672.  Specifically, the Court should consider

> the hiring party's right to control the manner and means by which
> the product is accomplished[;] . . . the skill required; the source of
> the instrumentalities and tools; the location of the work; the
> duration of the relationship between the parties; whether the hiring
> party has the right to assign additional projects to the hired party;
> the extent of the hired party's discretion over when and how long
> to work; the method of payment; the hired party's role in hiring
> and paying assistants; whether the work is part of the regular
> business of the hiring party; whether the hiring party is in business;
> the provision of employee benefits; and the tax treatment of the
> hired party.

<u>Darden</u>, 503 U.S. at 323-24; <u>see</u> <u>Scott</u>, 523 Fed. Appx. at 912-13; <u>Shah</u>, 346 Fed. Appx. at 834;

<u>Prather</u>, 326 Fed. Appx. at 672.  In these cases, summary judgment in favor of the defendants -

clients of the temporary staffing agencies - was affirmed on the basis that the plaintiffs were not

employees of the staffing agencies' clients, but rather employees of the temporary staffing

agencies.

      Similarly, in this case, under <u>Darden</u> plaintiff was not an employee of defendant Tuesday

Morning.  Labor Ready, the staffing company, assigned plaintiff to work at the Tuesday

Morning Store for 10 days in May of 2011 to assist Tuesday Morning with preparing the Store

for opening in June 2011.  See Kirk-Fowler Decl. ¶¶ 6, 9.  The staffing company provided

plaintiff with a time card, and plaintiff recorded the amount of time spent working at the Store

and then returned the card to the staffing company.  Id. ¶¶ 8-9.  Plaintiff never applied for

employment with Tuesday Morning, Tuesday Morning never paid wages to plaintiff or provided

employment benefits to him.  Id. ¶ 2.  Nor did Tuesday Morning enter any contracts with

plaintiff.  Id.

Under the Agreement between Labor Ready and Tuesday Morning, Labor Ready was

solely responsible for plaintiff's pay rate, the payment of plaintiff's wages and all required taxes

and social security, as well as maintaining workers compensation insurance on plaintiff's behalf.

Id. ¶¶ 5, 10.  Indeed, Labor Ready never provided Tuesday Morning with plaintiff's social

security number, and Tuesday Morning never intended to utilize plaintiff as its employee.  Id.

Thus, after plaintiff ended his work at the Store in May 2011, Tuesday Morning never received

any claim from plaintiff for unemployment compensation benefits naming Tuesday Morning as

his employer.  Id. ¶ 12.  Under the Terms and Conditions to the Agreement, without prior written

agreement of Labor Ready, Tuesday Morning was not permitted "to entrust [Labor Ready's

temporary employees] with the care of unattended premises, custody or control of cash, credit

cards, valuables or other similar property."  See Terms and Conditions to Agree. § 4(c).  Nor was

Tuesday Morning permitted to "allow [Labor Ready's temporary employees] to operate

machinery equipment or motor vehicles without the prior written permission of [Labor Ready] in

each occasion."  Id.  Applying the applicable Darden test, plaintiff in this case was not an

employee of Tuesday Morning for purposes of plaintiff's claims.  See Darden, 503 at 322-24;

Scott, 523 Fed. Appx. at 912-13; Shah, 346 Fed. Appx. at 833; Prather, 326 Fed. Appx. at 672.

Citing In re Enterprise Rent-A-Car, 683 F.3d at 468-69, plaintiff argues that the joint employer test should be applied in determining employer status in this case, instead of the Darden test.  See Pl's Br. 5.  Our Court of Appeals in In re Enterprise stated that it was specifically "consider[ing] whether a defendant is a plaintiff's 'employer' **within the meaning of that term under the [*Fair Labor Standards Act ('FLSA')]*.**"  Id. at 468 (emphasis added).  Thus, that case was distinguishable from this case.

Moreover, the Court in In re Enterprise clarified that "the FLSA defines employer 'expansively,' and with 'striking breadth.'"  Id. (Supreme Court citations omitted).  Indeed, "[t]he Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is 'the broadest definition that has ever been included in any one act.'"  Id. (citation omitted).  The Court of Appeals in In re Enterprise also noted that FLSA regulations specifically provide a description of joint employment for purposes of the FLSA.  Id. (citing 29 C.F.R. § 791.2(b)).

On the other hand, "**Title VII's** definition of an employer is **much narrower** than the [Family and Medical Leave Act's ('FMLA')] and the FLSA's definition of an employer as any person acting 'directly or indirectly, in the interest of an employer' in relation to an employee."  Haybarger v. Lawrence County Adult Probat'n and Parole, 667 F.3d 408, 415 n.6 (3d Cir. 2012).  "Because Title VII defines an employer more narrowly than the FMLA and the FLSA, decisions construing Title VII do not provide a persuasive source of authority" in cases construing the FMLA and the FLSA.  Id.  As explained, several cases construing Title VII under circumstances similar to this case, where plaintiffs were temporarily assigned to clients of the employing staffing agencies, applied the Darden test and found that the plaintiffs were employees of the staffing agencies and not the agencies' clients.  Moreover, for reasons explained above, Tuesday

8

Morning did not have sufficient control over the terms and conditions of plaintiff's employment and did not share or co-determine those matters with Labor Ready, to be considered a joint employer for purposes of Title VII, in any event.

Summary judgment is appropriate in a Title VII case when the plaintiff is unable to establish an employment relationship with the defendant.  See Brown v. J. Kaz, Inc., 581 F.3d 175, 180 (3d Cir. 2009) (citing Atkinson v. LaFayette College, 460 F.3d 447, 454 n. 6 (3d Cir.2006)).  "[C]laims under the PHRA are interpreted coextensively with Title VII claims," see Brown, 581 F.3d at 180 n.1 (quoting Atkinson, 460 F.3d at 454 n.6), and it follows that plaintiff is an employee of Tuesday Morning under the PHRA only if he is one under Title VII.  See id. ("it follows that [the plaintiff] is an employee of [the defendant] under the PHRA only if she is one under Title VII").  Since plaintiff is not an employee of Tuesday Morning for purposes of Title VII, he is not an employee of defendant for purposes of the PHRA.  See id.

Finally, plaintiff claims that Tuesday Morning violated § 1981 by denying him the benefits of the contractual relationship he had entered into with Tuesday Morning.  See Pl.'s Compl. ¶ 50.  The Complaint fails to identify any specific contract between plaintiff and Tuesday Morning, and the record indicates that Tuesday Morning never entered into any contracts with plaintiff.  See Kirk-Fowler Decl. ¶ 2.  In any event, in that plaintiff's § 1981 claim is analyzed under the same framework as Title VII, the § 1981 claim "suffers the same fate." See Holtzman v. The World Book Co., Inc., 174 F. Supp. 2d 251, 258 (E.D. Pa. 2001) (finding that because plaintiff was not an employee of the defendant for purposes of Title VII, summary judgment should also be entered in defendant's favor on plaintiff's § 1981 claim for workplace discrimination for the same reason).  Accordingly, defendant's summary judgment motion is granted, and judgment is entered in favor of defendant and against plaintiff.

9

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MATTHEW FAUSH** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **TUESDAY MORNING, INC.** | : | NO.  12-7137 |

### O R D E R

**AND NOW**, this 23ʳᵈ day of January, 2014, upon consideration of the Motion of

Defendant, Tuesday Morning, Inc. ("Tuesday Morning"), for Summary Judgment, defendant's

brief in support thereof, the Response thereto of Plaintiff, Matthew Faush, and defendant's Reply

brief, for reasons explained in the accompanying Memorandum, it is hereby **ORDERED** that

Defendant's Motion for Summary Judgment is **GRANTED**.

        **IT IS FURTHER ORDERED** that:

        1.  **JUDGMENT** is entered in Favor of Defendant, Tuesday Morning, and

        Against Plaintiff, Matthew Faush;

        2.  The Clerk of Court shall mark this action **CLOSED** for statistical purposes.

        BY THE COURT:

         s/ L. Felipe Restrepo
        L. FELIPE RESTREPO
        UNITED STATES DISTRICT JUDGE